IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DENY L. KING, | CASE NO. 5:23-CV-00312-BMB |
| Petitioner, | JUDGE BRIDGET M. BRENNAN |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN TOM WATSON,[1] | **REPORT AND RECOMMENDATION** |
| Respondent. | |

## INTRODUCTION

Representing himself, Petitioner Deny L. King, a prisoner in state custody, seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction under § 2254(a) and this matter has been referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry of Apr. 19, 2023).

On June 30, 2023, then-Respondent Warden David Bobby, as Warden of the Northeast Ohio Correctional Institution (hereinafter, the State), moved to dismiss the petition and filed the

---

[1]     When Mr. King filed his petition, he was incarcerated at the Northeast Ohio Correctional Institution. (*See* ECF #1 at PageID 1). He later was transferred to North Central Correctional Complex. (ECF #25). A post-filing transfer does not moot the petition so long as there is an alternative respondent with custody inside the Northern District of Ohio. *See White v. Gilley*, No. 6:23-cv-110, 2023 WL 5987206, at *3 (E.D. Ky. Sept. 13, 2023). I take judicial notice that the official website of the Ohio Department of Rehabilitation and Corrections locates that facility in Marion County, Ohio and lists Tom Watson as its warden. *See North Central Correctional Complex (NCCC), Ohio Dept. of Rehab. & Corr.,* http://drc.ohio.gov/about/facilities/north-central-correctional-complex/north-central-correctional (last accessed Jan. 27, 2025). Marion County is within this judicial district, *see* 28 U.S.C. § 115(a)(2), so I substitute Warden Watson as the proper respondent under Fed. R. Civ. P. 25 and Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules).

state-court record and trial transcripts. (ECF #6, #6-1, #6-2, #6-3, #6-4, #6-5, and #6-6). In response, Mr. King moved to stay the proceedings and amend the petition. (ECF #7). On December 10, 2023, counsel appeared on Mr. King's behalf. (ECF #9) and opposed the motion to dismiss (captioned as a Traverse to Return of Writ). (ECF #13). Ultimately, I denied the State's motion to dismiss, denied Mr. King's motion to stay, granted his motion to amend, and set a new briefing schedule. (ECF # 15). After Mr. King filed his proposed amended petition on March 21, 2024 (ECF # 17), the State supplemented the state court record with additional exhibits (ECF #18) and filed the Return of Writ (ECF #19). On July 10, 2024, Mr. King filed his Traverse to Return of Writ (ECF #21), making this matter decisional.

For the reasons below, I recommend the District Court **DISMISS** the petition because portions are untimely and all grounds for relief are procedurally defaulted. I **DENY** his requests for a period of discovery and to conduct an evidentiary hearing. Finally, I recommend the district court **DENY** a certificate of appealability.

## I.   PROCEDURAL HISTORY

### A.   State court factual findings

The factual findings of the Ohio Court of Appeals, Fifth District, made on direct appeal are presumed correct unless Mr. King rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In its opinion affirming the denial of Mr. King's post-trial motions, the Fifth District found as follows:

> {¶2} On September 17, 2019, the Stark County Grand Jury indicted Appellant with one count of Aggravated Murder in violation of R.C. 2903.01(A) with specifications for Repeat Violent Offender (R.C. 2941.149) and Firearm (R.C. 2941.145), Felonious Assault in violation of R.C. 2903.11 with specifications for Repeat Violent Offender (R.C. 2941.149) and Firearm (R.C. 2941.145), and Having Weapons While Under Disability in violation of R.C. 2923.13.

2

{¶3} On September 20, 2019, Appellant entered a plea of not guilty to all counts of the indictment.

{¶4} On January 27, 2020, Appellant filed Notice of Defense on his intent to present a claim of Defense of Others.

{¶5} On February 10, 2020, the matter proceeded to a jury trial.

{¶6} At trial, the State called Deputy Jack Carruthers to testify. On direct examination, Deputy Carruthers testified that on June 27, 2019, he was dispatched to Brick City Lounge.

{¶7} Upon arriving at Brick City Lounge, Deputy Carruthers testified there were multiple people outside and he saw a black male, later identified as Jason Calhoun, laying in the doorway. Deputy Carruthers immediately began administering aid. While administering aid, Deputy Carruthers found a revolver on Calhoun.

{¶8} Next, the State called Deputy Derek Little to testify. Deputy Little testified upon arriving at the Brick City Lounge, he continued into the establishment toward where the second victim was located. Deputy Little testified that he found the second victim, later identified as Henderson Garner, laying on the floor with gunshot wounds to his leg and shoulder.

{¶9} The State then called Henderson Garner to the stand. Garner testified that on the date of June 27, 2019, he arrived at Brick City Lounge after a pool tournament. He was friends with Jason Calhoun. He testified that while he was playing pool that night strangers entered the establishment. A fight then broke out, but security broke up the fight and moved everyone out. Henderson soon joined Calhoun outside to see what was going on. As they were attempting to latch the door, Henderson saw a man with a gun on the corner. Henderson asked Calhoun if it looked like the man had a gun. Calhoun did not agree. The man with the gun then came up to Calhoun and Henderson and said he was looking for his friend. Henderson said they told the man that everyone was gone, and no one was inside. Henderson said the man asked again to look for his friend inside and then started shooting. He shot Henderson in the leg and chest, and shot Calhoun. Henderson then testified that they did nothing to provoke the man with the gun.

{¶10} Under cross-examination he testified that a fight broke out between the strangers and other patrons, and security broke up the fight and took everyone outside. At that point, Henderson said he did not see any of the strangers still in the bar. He testified that the man with the gun asked about his friend politely, but never asked to go inside. He then testified he was standing next to Calhoun when the man started shooting.

{¶11} Next, the State called Edward Daniels to the stand. Daniels testified he was employed by Brick City Lounge as a DJ on June 27, 2019. He testified that neither he nor Calhoun participated in the fight that night, and that they had tried to break it up. Daniels was outside with Calhoun when a man came up to Calhoun attempting to get into the bar to find his friend. After being told his friend was not inside the bar and that the bar was closed, the man shot Calhoun. Daniels then called 911. Daniels said it was readily apparent Calhoun was injured, as there was blood on the ground and he was struggling to breathe.

{¶12} The State then called Milan Carr to the stand. Carr testified that he and another person went to Brick City Lounge on June 27, 2019, with Appellant and Eric Artis, who went by the name, "Cleve". He said they arrived around eight p.m. and ordered drinks. At some point a fight broke out and he was hit in the head with a bottle and left the bar on foot and ran through a field home.

{¶13} The State also called Detective Ross to testify. Detective Ross testified that he responded to Brick City Lounge just after the incident. He obtained video surveillance footage of the shooting. On the video, Detective Ross identified Appellant as the shooter. Detective Ross continued that his investigation showed Appellant had left Ohio for California. He testified the West Coast Marshall team arrested Appellant and transported him back to Ohio.

{¶14} During Detective Ross's testimony, the State then played a video showing the fight inside the bar. The video showed Appellant being hit by a pool stick, and Appellant hitting back. The video then showed Carr leaving Brick City Lounge first, followed by Appellant and Eric Artis. Detective Ross also testified that the video surveillance showed Appellant leaving with the murder weapon in his hand.

{¶15} Finally, the State called Dr. Frank Miller to testify. Dr. Miller testified he examined Calhoun. Dr. Miller testified Calhoun had suffered two gunshot wounds, one in his face and one in his back. The gunshot to his back was fatal.

{¶16} The State then rested its case.

{¶17} After the State rested its case, the defense called Appellant to testify. Appellant testified he has a prior conviction for attempted robbery in California. That night, Appellant, Carr, and Artis went to Brick City Lounge. While at the bar, Appellant said they made their way to the patio where a fight broke out. Appellant was hit with both a beer bottle and a pool stick. Appellant tried to leave the bar and testified someone was holding the door closed. Eventually, Appellant and Artis made it outside and headed to their car. They then heard gun shots. At this point Appellant and Artis realized Carr was not with them. Appellant tried to call Carr several times. He heard one patron threaten to "finish [someone] off." Appellant took the patron

to mean they were going to kill Carr. Appellant then grabbed his gun and headed back to Brick City Lounge, believing Carr was still inside.

{¶18} As Appellant approached the establishment, he encountered Calhoun and Daniels. Appellant asked multiple times to go into the bar to get Carr and was told he would not be let back inside. Appellant said he saw Calhoun lower his hand, and that is when Appellant pulled his gun and fired. After the shooting, Appellant testified he left the scene without going inside to check to see if Carr was there because he panicked.

{¶19} During cross-examination, Appellant testified that the robbery conviction in California had a firearm enhancement. Appellant confirmed he is not allowed to possess a firearm, but does anyway.

{¶20} After Appellant testified, the defense rested its case.

{¶21} On February 12, 2020, the jury returned a verdict of guilty on all counts of the indictment.

{¶22} On February 18, 2020, the trial court sentenced Appellant to life in prison without the possibility of parole for the Aggravated Murder charge, a concurrent six to nine year prison term for the Felonious Assault charge, a concurrent thirty-six month prison term for the Having Weapons Under Disability charge, a mandatory three year prison term on each of the firearm specifications, and the trial court did not sentence Appellant for his conviction on the repeat violent offender specification.

(ECF #6-1 at PageID 180-84; *see also State v. King*, No. 2020 CA 00064, 2021 WL 1894070, at *1-3 (Ohio Ct. App. May 11, 2021), *appeal not allowed*, 179 N.E.3d 1287 (Ohio 2022) (table)).

**B.  Trial court proceedings**

On September 17, 2019, a Stark County Grand Jury indicted Mr. King on three counts, as described above. (*See* ECF #6-1 at PageID 83-84). The indictment also included Repeat Violent Offender and firearm specifications. (*Id.*). At arraignment, Mr. King pled not guilty to all charges and specifications and was appointed counsel. (*Id.* at PageID 86).

Before trial, the State moved to amend the indictment to include an alternative basis for criminal liability. (*Id.* at PageID 87). On February 12, 2020, after trial, the jury found Mr. King

5

guilty of all counts as charged in the indictment, with firearm specifications attached to Counts 1 and 2. (*Id.* at PageID 95). On February 19, 2020, the court found Mr. King guilty of the Repeat Violent Offender specifications in Counts 1 and 2. (*Id.*). On March 6, 2020, the court sentenced Mr. King to life in prison without the possibility of parole for aggravated murder, six to nine years imprisonment for felonious assault, and 36 months for having weapons while under disability. (*Id.* at PageID 96). In addition, the court imposed two mandatory three-year prison terms for the firearms specifications, to be served consecutively. (Tr. 96-97). In all, Mr. King was ordered to serve a term of life without parole plus six years in prison. (Tr. 97).

**C.    Direct appeal and application to reopen direct appeal**

On March 20, 2020, Mr. King, represented by new counsel, appealed his conviction to the Fifth District. (ECF #6-1 at PageID 101). He raised three assignments of error: (1) the verdict was against the manifest weight of the evidence; (2) the verdict was insufficient as a matter of law; and (3) the trial court's sentencing was in error, depriving him of his constitutional rights. (*Id.* at PageID 107). On May 11, 2021, the Fifth District affirmed the trial court court's judgment. (*Id.* at PageID 178; *see also King,* 2021 WL 1894070).

Mr. King did not appeal this judgment to the Supreme Court of Ohio, thereby abandoning these claims. Rather, on August 6, 2021, Mr. King, representing himself, filed an application to reopen his appeal under Rule 26(B) of the Ohio Rules of Appellate Procedure. (ECF #6-1 at PageID 193). In his first assignment of error, Mr. King asserted his appellate counsel was ineffective for not presenting claims of ineffective assistance of trial counsel on direct appeal. (*Id.* at PageID 194). Specifically, Mr. King argued his appellate counsel should have raised the following trial-counsel errors:

- trial counsel failed to conduct a meaningful pretrial investigation of witness Henderson Garner's criminal record and therefore failed to impeach him using those records;

- trial counsel failed to move for a mistrial or request a curative instruction after one of the victim's family members screamed profanities at Mr. King in the courtroom and accused him of killing the victim;

- trial counsel did not obtain an expert to determine who shot and killed the victim;

- trial counsel failed to formally object to the court's unwillingness to provide a self-defense instruction;

- trial counsel failed to object to the State's use of video footage that he claims does not reflect the entire scene; and

- trial counsel failed to object to the State's opening statement, where the prosecutor declared Mr. King fled to California after the shooting.

(*Id.* at PageID 195-98). In his second assignment of error, Mr. King claimed the trial court abused its discretion and caused prejudicial error when it shifted the burden to him to prove self-defense, compelling him to take the witness stand. (*Id.* at PageID 198). For the third assignment of error, he claimed prosecutorial misconduct permeated the trial, beginning with the State's opening claim that Mr. King fled to California. (*Id.* at PageID 198-99). In his fourth assignment of error, Mr. King claimed the trial court abused its discretion and caused prejudicial error when it did not declare a mistrial after the victim's family members made prejudicial comments. (*Id.* at PageID 199). The State opposed reopening. (*Id.* at PageID 204-12). On September 29, 2021, the Fifth District overruled Mr. King's application to reopen. (*Id.* at PageID 217-24).

Mr. King raised the same alleged errors in his appeal to the Supreme Court of Ohio and the State opposed. (*Id.* at Page ID 228-38). On February 1, 2022, the Supreme Court of Ohio

declined jurisdiction. (*Id.* at PageID 252; *see also State v. King,* 179 N.E.3d 1287 (Ohio 2022) (table)).

**D.      Petition for postconviction relief**

Meanwhile, on April 30, 2021, Mr. King, through counsel, sought postconviction relief in the trial court, raising three grounds for relief. (ECF #6-1 at PageID 253). First, he claimed trial counsel was ineffective for failing to conduct a meaningful pretrial investigation, which would have revealed Mr. Garner's and Mr. Calhoun's criminal histories and the existence of an unnamed female witness who would have testified Mr. King "was trying to diffuse the situation before it escalated to violence." (*Id.* at PageID 255-56). Second, he claimed trial counsel was ineffective for not hiring an expert to examine the video footage from the Brick City Lounge. (*Id.* at PageID 256-57). Third, he claimed his case was compromised by the victim's family and friends dining near jurors during their lunch break at a local diner. (*Id.* at PageID 257-58). The State opposed the petition and Mr. King's request for a hearing on the matter, and Mr. King replied. (*Id.* at PageID 267-83, 292-94).

On November 9, 2021, the trial court dismissed the petition, finding res judicata barred Mr. King's claims of ineffective assistance of counsel and his claims about at the Brick City Lounge's video footage. (*Id.* at PageID 300). Relevant to the photos depicting jurors and the victim's family and friends dining in proximity to each other, the trial court noted that, before taking the verdict, it inquired and confirmed with the jury that no one attempted to speak with them or influence their verdict. (*Id.* at PageID 300-01).

Mr. King appealed to the Fifth District, raising two assignments of error: the trial court abused its discretion and committed prejudicial error by (1) not making findings of fact and

8

conclusions of law for each ground set forth in his petition; and (2) not ordering an evidentiary hearing that would have proven his claims. (*Id.* at PageID 308-10). Additionally, Mr. King challenged the trial court's conclusion that res judicata bars his claims. (*Id.* at PageID 310). The State opposed the petition and Mr. King replied. (*Id.* at PageID 312-26, 328-35). On March 9, 2022, the Fifth District determined the trial court correctly rejected the claims about trial counsel's alleged ineffective assistance for failing to conduct a meaningful pretrial investigation and for failing to hire an expert to examine the video footage of the incident as barred by res judicata. (*Id.* at PageID 338-49; *see also State v. King,* No. 2021CA00140, 2022 WL 702574 (Ohio Ct. App. Mar. 9, 2022)). In addition, the Fifth District concluded the alleged jury impropriety at the local diner was also barred by res judicata. (*Id.*).

On appeal to the Supreme Court of Ohio, Mr. King raised two propositions of law:

**Proposition of Law No. 1**: The term "Findings of Fact and Conclusions of Law" cannot lawfully be substituted with words a trial Court chooses to use on a whim, and a trial court that substitutes its own language for statutorily required language contravenes R.C. 1.42, abuses its discretion and commits prejudicial error by not making findings of fact and conclusions of law as to each ground set forth in a petition for post-conviction relief according to this Court's holding in *State v. Mapson,* 1 Ohio St.3d 217, 219, 438 N.E.2d 910 and *State v. Lester,* (1975), 41 Ohio St.2d 51.

**Proposition of Law No. 2**: A trial court should hold an evidentiary hearing when there is solid proof of a tainted jury and counsel ineffectiveness, and a trial court abuses its discretion and commits prejudicial error by not ordering an evidentiary hearing that would have proven, *inter alia,* ineffectiveness of counsel, jury impropriety and tampering with evidence, but not limited to, and said court further commits prejudicial error in holding that legitimate grounds stated in petition are barred by res judicata.

(*Id.* at PageID 354). On June 21, 2022, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 388; *see also State v. King,* 188 N.E.3d 1102 (Ohio 2022) (table)).

**E.**     **Subsequent motion practice**

On September 7, 2022, Mr. King, through counsel, filed a Motion for Leave to File Delayed Motion for New Trial in the trial court based on "newly discovered evidence." (ECF #6-1 at PageID 389). Two days later, he filed a corrected version of the motion. (*Id.* at PageID 399). There, he presented evidence of posts on Twitter concerning his trial before the jury rendered a verdict. (*Id.*). He claims these posts were unlawful and violated his constitutional right to a fair trial. (*Id.*). The State opposed the motion. (*Id.* at PageID 410-12). The trial court denied the motion, noting the docket reflects the court granted media permission to *Canton Repository* reporter Ed Balint to record video of the trial and the tweets were available to anyone with an internet connection as of February 11, 2020. (*Id.* at PageID 413-15). Thus, because the posts were publicly available as of that date, Mr. King had not presented "newly discovered evidence" to support his new trial motion. The trial court denied Mr. King's motion for reconsideration. (*Id.* at PageID 424).

On October 19, 2022, Mr. King, through counsel, appealed to the Fifth District, presenting three assignments of error.

> **First Assignment of Error**: The trial court abused its discretion and committed prejudicial error by violating Sup. R. 12(C)(2): Conditions for Broadcasting and Photographing Court Proceedings. (C) Limitations which states: (2) The judge shall inform victims and witnesses of their right to object to being filmed, videotaped, recorded, or photographed.

> **Second Assignment of Error**: Appellant was denied his right to effective assistance of counsel as guaranteed by the Sixth Amendment to the Constitution of the United States when counsel failed to make him aware that Appellant was being recorded with a live Twitter feed during Appellant's role as a witness.

> **Third Assignment of Error**: Trial court's decision violated the Ohio Supreme Court's holding in *State v. Bethel,* 167 Ohio St.3d 362, 2022-Ohio-783.

(*Id.* at PageID 425, 429). On June 14, 2023, the Fifth District overruled Mr. King's assignments of error. (*Id.* at PageID 459-68; *see also State v. King,* No. 2022CA00138, 2023 WL 3995682 (Ohio Ct. App. June 14, 2023), *appeal not allowed*, 216 N.E.3d 700 (Ohio 2023) (table)). On September 12, 2023, the Supreme Court of Ohio declined jurisdiction. *State v. King,* 216 N.E.3d 700 (Ohio 2023) (table).

## II.    FEDERAL HABEAS PETITION

On January 29, 2023, Mr. King placed his pro se habeas petition in the prison mailing system. (ECF #1 at PageID 15). In it, he raised three grounds for relief identical to the claims he raised in his April 2021 petition for post-conviction relief in the trial court. (ECF #1 at PageID 18-21). To support his ineffective-assistance-of-counsel claims, Mr. King attached his own affidavit declaring his counsel was ineffective and an affidavit from a videographer opining the jury should have reviewed all of the video footage of the bar instead of an edited version. (ECF #1-2 at PageID 23; ECF #1-3 at PageID 24). To support his claim that juror impropriety compromised his case, Mr. King attached still shots from a video camera showing jurors dining in proximity to the victim's family and friends and a purported timeline of events at the diner. (ECF #1-4 at PageID; ECF #1-5 at PageID 26; ECF #1-6 at PageID 27; ECF #1-7 at PageID 28; ECF #1-8 at PageID 29).

As filed, the amended petition raises three grounds for relief:

**Ground One**: Counsel was ineffective for not requesting a self-defense instruction and failing to conduct a meaningful pretrial investigation of Henderson Garner, an unnamed female witness, and the victim's criminal history.

**Ground Two**: Counsel was ineffective for not obtaining independent expert analysis of crucial video evidence, which might have revealed vital details about the actual shooter's identity and the victim's actions, thereby undermining the defense's case.

**Ground Three**: The petitioner's case faced potential compromise due to the impropriety of the victim's family and friends dining near jurors at Napoli's Italian

Restaurant and discussing the case, coupled with an outburst from the victim's brother in court, suggesting a likelihood of prejudicial influence on the jury.

(ECF #17-1 at PageID 1113-21). Mr. King attached the same supporting materials to the amended petition. (ECF #17-4 at PageID 1150-56). Along with granting the writ, Mr. King requests a discovery period and an evidentiary hearing. (*Id.* at PageID 1121-23).

### III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. King's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). But additional analysis is required before a federal court may review a petitioner's claims on the merits.

### IV.  PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including the statute of limitations,

12

exhaustion of state remedies, and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *See Daniels v. United States*, 532 U.S. 374, 381 (2001).

**A.     Statute of limitations under 28 U.S.C. § 2244(d)**

AEDPA establishes a one-year statute of limitations applicable to applications for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d); *see also Duncan v. Walker*, 533 U.S. 167, 179 (2001) (noting that the one-year limitations period in § 2244(d)(1) meets the interest in the finality of state court judgments). AEDPA's strict filing deadlines promote the finality of convictions and curb dilatory tactics. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

AEDPA's statute of limitations period runs from the latest of four dates:

(A)     The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A state-court judgment becomes "final" on direct review for purposes of § 2241(d)(1)(A) when direct review concludes or the time for pursuing direct review in state court expires. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled while a properly filed application for state post-conviction relief or other collateral review with respect to the pertinent judgment or claim remains pending.

**B.     Exhaustion of state court remedies**

A court may not grant a petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, a state corrective process is unavailable, or circumstances exist rendering such state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in where petitioner was convicted, giving the state a full and fair opportunity to decide the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim have been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default (discussed below), rather than exhaustion, applies. *Id.*

**C.     Procedural default**

Rooted in concerns of comity and federalism, the procedural default doctrine bars consideration of claims that have been defaulted under state law. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Absent a petitioner showing either cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice, a federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

There are two avenues by which a petitioner's may procedurally default a claim. *Williams*, 460 F.3d at 806. First, procedural default occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a

14

petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to meet that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman*, 501 U.S. at 732, the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims, barring federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show either (i) cause for the default and actual prejudice resulting from the alleged violation of federal law or (ii) failing to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural

default; they must present affirmative evidence or argument about the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted). A finding of cause and prejudice does not entitle a petitioner to habeas relief; it simply allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor any claimed ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than errors in the state trial creating a possibility of prejudice. The petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Murray*, 477 U.S. at 494. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, not presented at trial and so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

If a petitioner surpasses these procedural barriers, he can have the federal court review the merits of his federal constitutional claims under § 2254(d).

## V.     ANALYSIS

The State argues the first ground for relief does not relate back to Mr. King's original petition and should be dismissed as untimely. (ECF #19 at PageID 1210). In addition, the State claims all grounds for relief are procedurally defaulted and otherwise meritless. (*Id.* at PageID 1213-26).

**A.     A portion of Ground One of the amended petition does not relate back to the original petition and so is untimely, requiring dismissal.**

The Federal Rules of Civil Procedure apply in habeas cases "to the extent they are not inconsistent with any statutory provisions or [the habeas] rules." Habeas Rule 12. Rule 15 of the Federal Rules of Civil Procedure allows a habeas petitioner to amend or supplement a petition

once as a matter of course no later than 21 days after serving it or, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's permission. Fed. R. Civ. P. 15(a)(2). Because federal habeas corpus actions are subject to a one-year statute of limitations under 28 U.S.C. § 2244(d)(1), a petitioner may not amend claims after that limitations period expires unless the amendment relates back to the date of the original pleading under Rule 15(c). *See Howard v. United States,* 533 F.3d 472, 475-76 (6th Cir. 2008). Under Rule 15(c)(1)(B), an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." The rule allows a petitioner to invoke the original filing date when considering the timeliness of an amended petition that would otherwise fall outside the statute of limitations. *See Cowan v. Stovall,* 645 F.3d 815, 818 (6th Cir. 2011). In the context of a federal habeas petition, an amendment may relate back to a timely petition "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." *Mayle v. Felix,* 545 U.S. 644, 664 (2005) (cleaned up). But a claim will not relate back if it "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. It is not sufficient that a claim simply "relate[s] to the same trial, conviction, or sentence as a timely filed claim." *Id.* at 662.

In Mr. King's case, direct review concluded on June 26, 2021, when the time expired for him to pursue direct appeal in the Supreme Court of Ohio. *See* 28 U.S.C. § 2244(d)(1)(A); *see also*

Ohio S. Ct. Prac. R. 7.01(A)(1) (requiring appeal to be brought within 45 days after the appeals court's judgment). On April 30, 2021, Mr. King timely petitioned for post-conviction relief in the trial court, tolling the running the one-year period to June 21, 2022, the date on which the Supreme Court of Ohio declined jurisdiction. *See* 28 U.S.C. § 2244(d)(2) (tolling the one-year period while a properly filed application for state post-conviction relief or other collateral review with respect to the pertinent judgment or claim remains pending). The one-year statute of limitations therefore expired on June 22, 2023. Mr. King placed his habeas petition in the prison mailroom on January 29, 2023. (ECF #1). Under the prison mailbox rule, a habeas petition is considered filed when the prisoner provides the petition to prison officials for filing. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Thus, Mr. King's original petition was timely filed. His amended petition, filed on March 21, 2024—montha after the expiration of the limitations period—is not timely but may nonetheless overcome the bar to a merits review of untimely petitions if the amended claims relate back to the original petition.

In Ground One of Mr. King's original petition, he claimed his trial counsel was ineffective for not conducting a meaningful pretrial investigation that would have revealed Mr. Garner's and Mr. Calhoun's criminal histories and the existence of an unnamed female witness who would have testified Mr. King was trying to diffuse the situation before it escalated. (ECF #1-1 at PageID 18-19). In the amended petition, Mr. King adds that trial counsel was ineffective for not requesting a self-defense instruction. (ECF #17-1 at PageID 1113, 1115-18). The State argues the added instance of alleged ineffectiveness at trial does not arise from the same operative facts asserted in the original claim of ineffectiveness for not conducting a pretrial investigation of the victims and witnesses and thus the failure to request a self-defense instruction does not relate back to the

19

original petition. (ECF #19 at PageID 1210). In reply, Mr. King argues Ground One in the amended petition relates back to the original petition because "the detailed factual claims concerning counsel's failures all derive from the same trial and the same defense strategy initially challenged" and appears to argue that the addition of the self-defense-instruction claim simply adds more detail to the original claims in Ground One. (ECF #21 at PageID 1236-37) ("The amended claims do not stray from the original narrative that Mr. King's defense was compromised by ineffective legal representation; they enrich the narrative, providing the court with a comprehensive understanding of the alleged deficiencies.").

Under relation-back principles, it is not sufficient that the original and amended petitions both assert ineffective assistance of counsel claims. *See Watkins v. Deangelo-Kipp,* 854 F.3d 846 (6th Cir. 2017) (holding that petitioner's amended ineffective-assistance claim that counsel wrongly failed to request another competency evaluation did not relate back to the original ineffective-assistance claim that counsel failed "to investigate and raise a defense."). But an amended claim will relate back when it merely adds more detail to the claim in the original petition. *See Cowan,* 645 F.3d at 819 (holding amended ineffective-assistance claim alleging counsel failed to interview specific witnesses related back to an original ineffective-assistance claim alleging that counsel had "failed to investigate" and find "witnesses [who] would have supported" the defense).

In Mr. King's case, the additional ineffective assistance claim based on failing to request a self-defense instruction is different in both time and type to the original ineffectiveness claim for failing to conduct a meaningful pretrial investigation. *See Watkins v. Stephenson,* 57 F.4th 576, 581-82 (6th Cir.) (holding amended claim asserting ineffectiveness for failing to request self-defense jury instruction does not relate back to trial counsel's ineffectiveness for investigatory failures that

could have supported the defense), *cert. denied*, 144 S. Ct. 222 (2023). Thus, the ineffective-assistance claim for trial counsel's failure to request a self-defense instruction does not relate back to the ineffective-assistance claims in Ground One of the original petition. To the extent that Mr. King's argument implies the claims are connected because a meaningful pretrial investigation could have uncovered facts that "would tend to support" his self-defense theory and justify an appropriate jury instruction on the issue, the argument is unpersuasive. The two claims depend on separate transactions and do not share a common core of operative fact. *See Hebner v. McGrath*, 543 F.3d 1133, 1138 (9th Cir. 2008) (finding original claim related to evidence admitted at trial and amended claim directed at jury instructions given by trial court were "separate in time and type," and thus not sufficiently related under *Mayle*).

Because the one-year limitations period under § 2244(d)(1) expired before Mr. King amended his petition, any new claims raised in the amended petition are untimely. For these reasons, Mr. King's ineffective assistance claim related to the self-defense instruction does not relate back to the claims in the original petition. Therefore, I recommend the District Court **DENY** as untimely that portion of Ground One of the amended petition relating to ineffective assistance of counsel based on failure to request a self-defense instruction.

**B.      The remaining portions of Ground One and all of Grounds Two and Three are subject to procedural default and therefore must be dismissed.**

In his original federal habeas petition, Mr. King claimed (1) trial counsel was ineffective for failing to conduct a meaningful pretrial investigation; (2) trial counsel was ineffective for failing to hire an expert to examine the video footage from the Brick City Lounge; and (3) he was prejudiced by the victim's family and friends dining close to jurors during their lunch break at a local diner. (ECF #1). Mr. King procedurally defaulted these claims by not raising them on direct appeal.

As discussed above, courts use a four-pronged analysis to determine whether a petitioner's failure to comply with a state procedural rule bars review of a habeas claims: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to meet that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can show cause for not following the rule and was actual prejudice from the alleged constitutional error. *Maupin*, 785 F.2d at 138. Each prong supports a finding that Mr. King procedurally defaulted these three grounds for relief.

For the first prong, Ohio's doctrine of res judicata is a state procedural rule that prevents a defendant from bringing claims in a post-conviction action that were raised or could have been raised on direct appeal. *See State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967). Mr. King did not present on direct appeal any of the claims he raises in his federal habeas petition. Instead, he first raised these claims in his April 2021 petition for postconviction relief. The Fifth District held that res judicata applied to these claims because each could have been raised and litigated on direct appeal. (ECF #6-1 at PageID 347-49; *see also King*, 2022 WL 702574, at *5-6). This satisfies the first prong—that there was a procedural rule and Mr. King violated it—and the second prong—that the state court enforced the procedural rule.

For the third prong, the Sixth Circuit has long held that Ohio's rule denying review of the merits in postconviction proceedings when a petitioner could have, but failed, to raise a claim on direct appeal, is an adequate and independent state-law ground foreclosing review in subsequent federal habeas proceedings. *Lundgren*, 440 F.3d at 765. So this prong is also satisfied.

For the fourth prong, Mr. King provides no explanation in his petition or traverse as to why he could not make these arguments in his direct appeal leading to his claims being barred by res judicata. In his traverse, Mr. King acknowledges the State's argument that he has not shown cause or prejudice to overcome the procedural default but claims the State "neglects the possibility that the alleged ineffective assistance of counsel could itself constitute 'cause.'" (ECF #21 at PageID 1239). Attorney error that amounts to ineffective assistance of counsel can constitute "cause" under the cause-and-prejudice test. *Coleman,* 501 U.S. at 753-54. But a habeas petitioner cannot simply rely on conclusory assertions of cause and prejudice; instead, he must present affirmative evidence or argument about the precise cause and resulting prejudice. *Lundgren,* 440 F.3d at 764 (citations omitted). Mr. King has not attempted to meet that burden, and therefore has not shown cause for his failure to follow the state procedural rule or prejudice resulting therefrom. With the fourth prong satisfied, all four the *Maupin* prongs indicate Mr. King has procedurally defaulted his three grounds for relief under Ohio's doctrine of res judicata.

As discussed above, this Court may review Mr. King's procedurally defaulted claims if he can show that a constitutional violation has probably resulted in a fundamental miscarriage of justice the conviction of one who is actually innocent. *Schlup,* 513 U.S. at 327. Under the actual innocence exception, Mr. King must offer new reliable evidence not presented at trial showing it more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Id.*

The State argues Mr. King cannot show he is actually innocent of the crime because at trial he argued his actions were in self-defense or the defense of others. (ECF #19 at PageID 1215). In response, Mr. King states:

> it is important to recognize that claims of actual innocence need not necessarily negate a self-defense claim. If new evidence supports a scenario where [he] would not have been found guilty beyond a reasonable doubt, this too could meet the threshold for a miscarriage of justice exception. And, indeed, because self-defense is elemental under Ohio law, failure to the state to negate that element would, indeed, effect actual innocence.

(ECF #21 at PageID 1239). But he does not make any developed argument that disregarding his claims will yield a fundamental miscarriage of justice, nor does he direct the Court's attention to any new evidence supporting a claim of actual innocence. Therefore, Mr. King's three grounds for relief remain procedurally defaulted, barring this Court from reviewing the merits of his constitutional claims.

I thus recommend the District Court **DISMISS** the remaining portions of Ground One and all of Grounds Two and Three because they are procedurally defaulted.

## REQUEST FOR DISCOVERY AND AN EVIDENTIARY HEARING

Mr. King requests a period of discovery and an evidentiary hearing. (ECF #17-1 at PageID 1121). He identifies three reasons justifying discovery and a hearing, including the complexity and depth of the claims raised, the presence of new evidence and materials challenging the credibility of witnesses, and the requested discovery and hearing are "vital for upholding the integrity of the judicial process." (*Id.* at PageID 1122-23). As to the requested discovery period, he states:

> The three core issues of material fact that remain for discovery and review in this context are: (1) The failure of trial counsel to request a self-defense instruction in line with Ohio's evolving self-defense doctrine; (2) Counsel's ineffectiveness in not obtaining expert analysis of crucial video evidence, which might have revealed vital details about the actual shooter's identity and the victim's actions, thereby undermining the defense's case; and (3) The potential compromise of the petitioner's case due to the impropriety of the victim's family and friends dining near jurors at Napoli's Italian Restaurant and discussing the case, coupled with an outburst from the victim's brother in court, suggesting a likelihood of prejudicial influence on the jury.

24

(*Id.* at PageID 1099-1100).

As mentioned previously, the Habeas Rules control federal habeas petitions. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Unlike the typical civil litigant in federal court, a habeas petitioner is not entitled to discovery as a matter of ordinary course. *Id.* A district court has discretion to grant discovery in a habeas case when the petitioner makes a fact-specific showing of good cause. *See* Habeas Rule 6(a). It is not an abuse of discretion to deny a petitioner's request for discovery where the request amounts to a fishing expedition masquerading as discovery. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Good cause exists when specific allegations before the habeas court show reason to believe that petitioner may, if facts are fully developed, be able to demonstrate that he is entitled to relief. *See Harris v. Nelson*, 394 U.S. 286, 300 (1969). In addition, the petitioner must include any proposed interrogatories and requests for admissions and must specify any requested documents. *See* Habeas Rule 6(b).

Here, Mr. King does not indicate the nature of the discovery material he seeks. Indeed, he simply proposes the need for discovery in relation to his grounds for relief without explaining what he seeks to obtain. Mr. King's discovery request is more akin to a "fishing expedition masquerading as discovery." *See Stanford*, 266 F.3d at 460. Habeas Rule 6 does not sanction fishing expeditions based on a petitioner's conclusory allegations. *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (citation omitted).

As for Mr. King's request for an evidentiary hearing: such proceedings are permitted only in limited circumstances. As set forth in § 2254(e)(2), if the applicant has failed to develop the factual basis of a claim in state court proceedings, the court will not hold an evidentiary hearing on a claim unless the applicant shows the following:

     (A)     the claim relies on—

          i.     a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

          ii.     a factual predicate that could not have been previously discovered through the exercise of due diligence; and

     (B)     the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*See also* Habeas Rule 8 (addressing evidentiary hearings). But even when a petitioner is not disqualified from receiving an evidentiary hearing under § 2254(e)(2), that alone does not entitle him to one. *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003).

In *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), the Supreme Court stated:

In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether the grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.

It follows that if the record refutes the petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

*Id.* (citations omitted).

I first consider whether Mr. King failed to develop the factual basis of his claims. In *Williams v Taylor*, 529 U.S. 420 (2000), the Supreme Court explained that "the fault component of 'failed' is to ensure the prisoner undertakes his own diligent search for evidence," and "[d]iligence . . . depends on whether the prisoner made a reasonable attempt, in light of information available at the time, to investigate and pursue claims in state court." *Id.* at 435. "Diligence will require in the

usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id. at* 437.

Mr. King moved for post-conviction relief in the trial court under Ohio Revised Code § 2953.21. Under Ohio law, a criminal defendant who files a petition for post-conviction relief is not automatically entitled to hearing. *State v. Cole,* 443 N.E.2d 169, 170 (Ohio 1999). Before granting an evidentiary hearing, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate his claims. *State v. Calhoun,* 714 N.E.3d 279, 282-83 (Ohio 1999). In his motion, Mr. King raised three issues identical to the grounds he raises in his federal habeas petition and requested an evidentiary hearing. (*Compare* ECF #6-1 at PageID 255-59 *with* ECF #1-1 at PageID 19-22). In support of those claims, Mr. King attached his own affidavit stating trial counsel did not conduct a meaningful pretrial investigation, did not hire an expert witness; and his trial was unfair. (*Id.* at PageID 340). He also attached an affidavit of Bertram McCleskey, a videography specialist who reviewed the transcripts and believed the jury should have viewed an unedited video, "since doing so may have confirmed the defendant's assertion that the victim was shot in the back by someone else." (*Id.*). Last, he attached photographs and a timeline, allegedly of the victim's family dining near the jurors on February 11, 2020. (*Id.*). The trial court denied the petition without holding an evidentiary hearing. (*Id.* at PageID 300-01). On appeal, the Fifth District upheld the trial court's decision denying his petition and his request for an evidentiary hearing. (*Id.* at PageID 349). In addition to finding all of the claims barred under res judicata, the Fifth District determined as follows:

### *Ineffective Assistance*

{¶21} Appellant set forth three claims in his petition for post-conviction relief. In the first and second claims, appellant alleged trial counsel rendered ineffective assistance

because he failed to conduct a pre-trial investigation and failed to hire an expert to review the video of the incident.

{¶22} A properly licensed attorney is presumed competent. In an ineffective assistance analysis, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the trial would have been different.

{¶23} Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel.

{¶24} Appellant contends the trial court committed error in denying the petition without an evidentiary hearing as to his ineffective assistance claims. However, before a petitioner can be granted a hearing in proceedings for post-conviction relief upon a claim of ineffective assistance of trial counsel, petitioner bears the initial burden to submit evidentiary quality material containing sufficient operative facts that demonstrate a substantial violation of any of trial counsel's essential duties, in addition to prejudice arising from that ineffectiveness. The failure to present essential operative facts in supporting evidentiary quality materials warrants dismissal of the petition for post-conviction relief without a hearing.

{¶25} Appellant's evidence as to alleged insufficient pre-trial investigation by his counsel is his own affidavit. As self-serving testimony, the trial court could give little or no weight to his affidavit. A petitioner's self-serving affidavit generally does not meet his or her required minimum level of cogency. Appellant's affidavit does not demonstrate a substantial violation of his trial counsel's essential duty, or demonstrate prejudice arising from that ineffectiveness, particularly since there is no demonstration that the prior criminal charges of Mr. Garner were admissible at trial, or that any of the other witnesses would have stated Mr. Garner removed the firearm possessed by the victim.

{¶26} As to the alleged ineffective assistance for the failure to hire an expert to examine the video of the incident, appellant opines in his affidavit that the State's witness altered the footage and, if it were left intact, "the footage would have revealed that someone other than me fired the fatal shot," as the victim's back was never turned towards him. As stated above, a petitioner's self-serving affidavit generally does not meet his or her required minimum level of cogency. Further, appellant does not explain how a defense expert would have changed the result of the trial. This is

particularly true because appellant's defense at trial was defense of others, not that he did not fire the fatal shot. At trial, appellant identified the person he was allegedly defending. In his direct appeal, appellant argued the evidence demonstrated he shot the victim in defense of another.

{¶27} Appellant also relies on the affidavit of McCleskey in support of his claim. McCleskey averred that "the jury must be able to view the entire unedited unredacted version as anything else has the potential of having probative evidence truncated whether inadvertently or otherwise." However, there is no indication that McCleskey viewed the video footage, and any claim that a portion of the video was missing at trial is speculative. Further, McCleskey opined only that the alleged unredacted footage, "*may* have confirmed [appellant's] assertion that the victim was shot in the back by someone else." However, appellant never made the assertion that he did not shoot the victim in the back at trial, and this assertion was contradicted by the evidence, including appellant's own testimony that he shot the victim in defense of himself or others. Thus, there is not a reasonable probability that, but for the lack of expert or a different presentation of the video, the outcome of the trial would have been different.

{¶28} We thus find appellant failed to support his petition with evidentiary quality materials supporting his contention that trial counsel failed to perform any of his essential duties, or that any prejudice arose from this alleged ineffectiveness.

. . .

Additionally, appellant did raise the issue of ineffective assistance of trial counsel in his Appellate Rule 26 application for re-opening with regards to pre-trial investigation and the alleged failure of his trial counsel to impeach several of the State's witnesses due to their criminal history. We overruled his argument. Specifically, with regard to Mr. Garner, we stated, "the record does not show Henderson Garner has any criminal conviction which would be admissible under Evid.R. 609."

### *Jury Impropriety*

{¶31} Appellant's final claim is that there was jury impropriety because he obtained surveillance video showing the jurors and the victim's family ate at the same restaurant on February 11, 2020, smiling and/or waving at each other. We find the trial court did not commit error in overruling this claim. As detailed by the trial court, the transcript reveals the trial court instructed the jurors throughout the trial that they were not to talk about the case among themselves or with anyone else, and this admonishment was given to the jurors before they took their lunch break on February 11, 2020. Additionally, prior to taking the verdict and before allowing spectators into the courtroom on February 12, 2020, the trial court asked the jurors

whether or not anyone had attempted to speak with them or attempted to influence their verdict. The jurors confirmed that no one had.

{¶32} Appellant contends the trial court committed error in denying the petition without an evidentiary hearing as to this claim. We disagree. A defendant advancing a post-conviction petition is required to present evidence which meets a minimum level of cogency to support their claims.

{¶33} Appellant attached photographs purportedly taken from restaurant security cameras and a "timeline" of the alleged video. However, the notes and photographs were not authenticated. Appellant did not provide any affidavits from jurors or restaurant employees authenticating the purported video, photographs, or timeline. The remaining information about the alleged juror misconduct came from appellant's affidavit. As self-serving testimony, the trial court could give little or no weight to his affidavit. Despite appellant's assertion that he will rectify the issue at an evidentiary hearing, it is appellant's burden to present evidence in his petition which meets a minimum level of cogency to support his claims. Appellant fails to support his petition with evidentiary quality materials with regard to jury impropriety.

. . .

{¶35} The affidavits, documentary evidence, files, and the records do not demonstrate appellant set forth sufficient operative facts to establish substantive grounds for relief. Accordingly, the trial court properly denied appellant's petition for post-conviction relief without holding an evidentiary hearing.

(*Id.* at PageID 344-49).

Thus, it was Mr. King's lack of diligence in supporting his petition that resulted in the denial of his request for an evidentiary hearing to develop the record in state court. Mr. King's claims do not rely on a new rule of constitutional law or a factual predicate that could not have been previously discovered. Additionally, he has not shown that the facts underlying the claims would be sufficient to establish by clear and convincing evidence that but for the constitutional errors, no reasonable factfinder would have found him guilty of the offenses. Therefore, he is not entitled to an evidentiary hearing under § 2254(e)(2).

For these reasons, I **DENY** Mr. King's requests for a period of discovery and to conduct an evidentiary hearing.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, as here, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El*, 537 U.S. at 337.

Mr. King has not made a substantial showing that he was denied any constitutional right, and jurists of reason would not find it debatable whether his claims are procedurally defaulted under *Maupin*. Therefore, I recommend the District Court **DENY** Mr. King a COA.

CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DISMISS** the petition and **DENY** a certificate of appealability. I also **DENY** Mr. King's requests for a period of discovery and to conduct an evidentiary hearing.

Dated: January 30, 2025

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE